Joannes Brothers Company, Respondent, *v.* Federal Sugar Refining Company, Appellant.

First Department, December 3, 1926.

Judgments — motion to vacate judgment on ground of perjury and fraud—motion for new trial on ground of newly-discovered evidence — judgment was obtained in action by plaintiff to rescind contract of sale of sugar — action was brought on ground that sugar was "off color" and otherwise not according to agreement — defendant took samples of sugar at time complaint was made as to quality which was three years before trial — defendant claims that sugar returned, after judgment in rescission, was, in fact, not sugar shipped — perjury on part of plaintiff's witnesses not newly-discovered evidence — fact that plaintiff may have sold part of sugar during pendency of action is not newly-discovered evidence — no showing that testimony by plaintiff's witnesses was false — alleged substitution may have been made after judgment in rescission was rendered — defendant's remedy, if any, is against plaintiff, as bailee of sugar.

A judgment was rendered in favor of the plaintiff, rescinding a contract for the sale of 1,142 barrels of sugar, on the ground that the sugar was "off color"

and did not conform to the contract. On the trial it appeared that as soon as complaint was made as to the quality of the sugar, an agent of the defendant took samples of the sugar but made no general inspection of the sugar or the bags in which it was contained. The present motion to vacate the judgment on the ground that certain witnesses for the plaintiff had committed perjury, that the judgment was the result of a conspiracy between the plaintiff and its witnesses, and was obtained by means of imposing a fraud upon the court, are denied, since it appears that there is nothing substantial alleged in support thereof, for the allegations as to fraud, conspiracy and perjury are merely argumentative.

Defendant's motion for a new trial on the ground of newly-discovered evidence is based on the allegation that thirty-seven per cent of the sugar returned by the plaintiff following the entry of judgment in rescission was not sugar shipped by the defendant to the plaintiff, and on the allegations that the plaintiff's witnesses committed perjury in testifying at the trial that all of the sugar, with the exception of a few bags, was in plaintiff's warehouse in the same condition as when received. The motion is denied for the defendant had three years during the pendency of the action in which to inspect the sugar and did not take advantage of its opportunity to do so, with the exception that it did make a perfunctory inspection at the time when the complaint was first made by the plaintiff against the quality of the sugar. Furthermore, the defendant could have had the trial suspended for the purpose of making a complete and further inspection of the sugar and of the bags in which it was contained. Another difficulty with defendant's position is that it cannot, at the present time, show that the testimony of the plaintiff's witnesses was false, for any substitutions made in the sugar may have been made after the judgment was rendered. Therefore, none of the evidence suggested by the defendant constitutes newly-discovered evidence which speaks as of the time of the trial and which would controvert the testimony of plaintiff's witnesses or change the outcome of the trial.

The defendant's remedy, if any, is against the plaintiff as bailee of the sugar, to recover the value of that part of the sugar shipped by the defendant, which was not returned after the judgment in rescission was rendered.

APPEAL by the defendant, Federal Sugar Refining Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of April, 1926, denying defendant's motion to vacate the judgment and for a new trial of the action on the grounds of: (1) Alleged perjury committed on the trial by certain of plaintiff's witnesses; (2) alleged conspiracy between the plaintiff and said witnesses; (3) alleged fraud and imposition on the court; (4) alleged newly-discovered evidence.

*Chauncey E. Treadwell* of counsel [*Harold D. Beatty* with him on the brief; *Ernest A. Bigelow*, attorney], for the appellant.

*George T. Hogg* of counsel [*John F. Martin* with him on the brief; *Davies, Auerbach & Cornell*, attorneys], for the respondent.

DOWLING, J. Plaintiff, a wholesale grocer, doing business at Green Bay, Wis., in the spring of 1920 made a contract with

defendant, operating a sugar refinery at Yonkers, N. Y., whereby the latter contracted to deliver to the former 1,142 barrels of fine granulated sugar, or the equivalent in 100-pound bags, on the basis of $3\frac{1}{2}$ bags to the barrel, at the price of twenty-six cents per pound, cash, less two per cent, f. o. b. refinery, Yonkers, delivery to be made in July and/or August, charges for lighterage, cartage, etc., for the account of the buyer. Pursuant to the contract, defendant delivered to the plaintiff on lighters at Yonkers, N. Y., a total of 3,926 bags of sugar, each and every bag of which was claimed to have been marked, " Order Federal Sugar Refining Company, notify Joannes Brothers Company," and with one of the two numbers allotted to the contract, either No. 63985 or No. 63986; 1,934 bags were marked contract No. 63985 and the other 1,992 bags were marked contract No. 63986. These bags were discharged from lighters at pier 29, East river, and at that time there had been no substitution. They were transported from there to New London, and thence by an all rail route (including car ferry) through Canada and the Great Lakes, and arrived at Green Bay at the end of August and beginning of September. After plaintiff had received the sugar and stored it, and had sold 25 bags, complaints were received from its purchasers that it was of inferior quality, being " off color " and irregular in granulation. Defendant's broker was notified, an examination was made and samples were taken by said broker. Defendant claimed the sugar was good fine granulated sugar and refused to consent to a rescission of the contract. Thereupon plaintiff in November, 1920, brought this action for rescission, on the ground of said defective quality of the sugar, and in its complaint alleged that it " held and holds said shipments of sugar subject to the direction of the defendant and at its risk and expense but subject to any lien which the plaintiff has thereon for the repayment of the amount of its said money and interest thereon, and for storage and other proper charges on account thereof."

The action was tried in May, 1923. Upon that trial the main issue litigated was whether the sugar delivered was inferior in quality and particularly whether it was " off color." That issue was determined in favor of plaintiff. It also appeared upon the trial that besides about 25 bags of this sugar concededly sold by plaintiff to its customers, there were about 200 bags more (" a couple of hundred " witness Smith testified) which were in the shipment when it arrived at Green Bay, marked with the names of other parties and with other numbers, which were received by plaintiff in lieu of defendant's bags. Defendant claimed that because of this inability of plaintiff to return to it 225 bags of the original

shipment, there could be no rescission of the contract. This contention was overruled. Decision was rendered in favor of plaintiff on February 23, 1924, and on March 5, 1924, judgment was entered in favor of plaintiff in the sum of $125,996.79. This judgment was affirmed on appeal to this court, February 20, 1925 (212 App. Div. 868), and on appeal to the Court of Appeals on November 24, 1925 (241 N. Y. 553).

On December 8, 1925, the judgment was paid and on the same day possession of the sugar was demanded and received by defendant's representatives at Green Bay, Wis. Between December 18, 1925, and January 11, 1926, six carloads of the sugar in question arrived at the defendant's refinery in Yonkers, were unloaded, and each bag inspected and classified. This inspection and classification is claimed by defendant to have disclosed the following facts: Out of 3,899 bags so received from plaintiff, only 2,184 could be identified as sugar delivered under the contract; 309 bags were of other sugar refineries, and 300 of these had been turned inside out and the marks on the inside showed thirty-six different brands from at least twenty-five different refineries; 120 were Federal Sugar Refinery bags with all marks unreadable; 138 were Federal bags, " notify Joannes," but with the contract number wholly or partly defaced; two bags were marked " notify Joannes," but with all other marks obliterated. All the rest of the bags bore contract numbers showing that they were from other shipments.

On March 15, 1926, defendant moved to vacate the judgment and for a new trial, upon the grounds: (1) That certain of the witnesses for plaintiff had committed perjury; (2) that the judgment was obtained by means of a conspiracy between plaintiff and said witnesses; (3) that the judgment was obtained by means of imposition and fraud upon the court; (4) because of newly-discovered evidence.

Upon this motion defendant contends that the result of the inspection and classification of the sugar when returned to it shows that the testimony that the sugar was held subject to defendant's order was wholly false and untrue; that thirty-seven per cent of the shipment could not have been returned; that the result of the trial would undoubtedly have been different, had it not been for the false testimony of plaintiff's witnesses, and that in the first place, the right to equitable relief would have totally disappeared, and the fact that plaintiff, while asserting that the sugar was unmerchantable, had gone ahead and disposed of thirty-seven per cent of the shipment, the same as it had of other sugars, would have had overwhelming weight with the jury in determining the issue of quality in favor of the defendant.

Defendant attacks the depositions of Mitchell Joannes, plaintiff's then president, and Jacob Nick, plaintiff's head receiving clerk, which depositions were taken March 10 to April 10, 1922, and were read on the trial. They testified that the sugar was placed in plaintiff's warehouse and "is now" there. Defendant also attacks the testimony of Herbert I. Smith, plaintiff's buyer, who testified on the trial to the same effect, adding that "a couple of hundred" of the bags had numbers other than the contract numbers involved in this case. Defendant says this testimony was fraudulent and perjurious, and claims that the fact that the statements were untrue was totally unknown to defendant and its witnesses, though it must have been known to be untrue to plaintiff's officers, owing to the magnitude of the discrepancy finally discovered, and the fact that the sugar was shifted about in plaintiff's warehouse on several occasions; that the only opportunity that defendant had been given to examine the sugar was when Pierson, defendant's broker, was allowed to go through the warehouse in which the sugar was packed "in stacks averaging from ten to fifteen sacks high and with aisles or passageways between the various stacks of the piles," and he went through with a sugar tryer, which did not injure the bags, and took various small samples. Defendant claims that at this time, October 4, 1920, plaintiff had had little opportunity to sell this sugar, and it is evident that it did sell or otherwise dispose of it after Pierson's inspection.

Defendant further says that "the usual custom in a case like this is to resell the sugar and then give the plaintiff an order directing delivery to the buyer on resale. The plaintiff undoubtedly reasoned that, if it won its suit, this practice would be followed, and, if it lost, it would be under no obligation to return the sugar. And, therefore, between the time of this first inspection in October, 1920, by a representative of the defendant, and the trial, plaintiff disposed of the sugar in suit just like any other sugar in its possession, with the result that when it was called upon to deliver the sugar in suit, it had to collect as many Federal Sugars as it could from various sources, and bluff the matter out, or admit that it had disposed of a large part of the sugar, thus furnishing strong proof that the sugar was perfectly merchantable fine granulated sugar, and that the excuse for its non-acceptance was trivial, and further taking away plaintiff's right to claim a trial in a Court of Equity."

As has been said, at the trial two questions were contested: *First,* was the sugar "off color?" and, *second,* was the plaintiff entitled to a rescission, when it was concededly not able to return the entire shipment inasmuch as the testimony showed that about 200 bags had been mixed in transit and about 25 bags had been sold?

The trial justice held that the sugar was " off color " and that plaintiff was entitled to equitable relief. On the appeal to the Court of Appeals the second question was mainly urged, namely, that plaintiff could not succeed in equity when it was unable to tender back 200 bags (five per cent) of the original shipment.

The only question requiring serious consideration is whether the fourth ground urged for granting the motion is tenable, viz., newly-discovered evidence, the first three being without substantial support, and the allegations of fraud, imposition, conspiracy and perjury being merely argumentative. In considering the motion from this viewpoint, it is evident that the defendant cannot now urge it as a ground for a new trial, since it had at hand the opportunity of making the inspection and classification it subsequently made. While its broker was making his inspection of the bags of sugar at plaintiff's warehouse on October 4, 1920, every bag could have been examined in detail at that time. There was no obstacle put in the way of the broker's examination, but he was only interested in taking small samples of the sugar, not in inspecting the bags. That such an examination might have been troublesome or expensive to make is no answer to the failure to make it. Had there been any substitution of the bags already made and had plaintiff been then unable to deliver thirty-seven per cent of the shipment, the disclosure of such facts on defendant's examination would have ended plaintiff's chance to recover.

The trial did not take place until May, 1923. Thus defendant had two and a half years during which to have its examination of the shipment, which was still in plaintiff's warehouse. It took no step to make the same. Upon the trial plaintiff's buyer testified that " a couple of hundred " bags bore numbers not the numbers of the contract involved in this action, and defendant's counsel said in the course of his argument to dismiss the complaint on the ground that 200 bags constituted too large an item to enable the plaintiff to make a valid tender back of the sugar, " I think perhaps we could have shown a larger amount than 200." If the question of the identity of the bags was at all important, defendant's counsel could have asked for a suspension of the trial until its representatives could make an inspection of the bags in plaintiff's warehouse, and as the case was being tried by the court without a jury, undoubtedly the request would have been granted. But it was not made. Defendant knew of the materiality of such evidence if it desired to litigate what plaintiff had to establish before it could recover — its ability to return substantially all the bags of sugar shipped to it by defendant in the condition it had received them.

The difficulty with defendant's position is that it is not able,

even now, to show that the testimony given by plaintiff's witnesses upon the trial was false as to the existence of the shipment in plaintiff's warehouse at the time of the trial in the same condition in which it was received there, with the exception of the 225 bags before referred to. If sales were made and substitutions had, for aught that appears in defendant's moving papers, they may well have been long after the trial. Certainly defendant offers no newly-discovered evidence now, which speaks as of the time of the trial, and which would controvert the testimony of plaintiff's witnesses, or change the outcome of the trial. The learned justice who tried the case and who heard the motion for a new trial has so held, and, we think, properly.

· If defendant has any remedy against plaintiff for, in fact, not returning the goods shipped to it and claimed to have been held by it for defendant's account, it must be in an appropriate action against plaintiff as bailee for defendant of the bags of sugar in question. Upon such an issue plaintiff would not be in a position to deny that it had all of the sugar shipped to it by defendant (except 225 bags) actually in its possession at the time of the trial in May, 1923.

The order appealed from should, therefore. be affirmed, with ten dollars costs and disbursements.

Clarke, P. J., Finch, McAvoy and Martin, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.